DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal of the Lucas County Court of Common Pleas' December 2, 2002 judgment sentencing appellant to life imprisonment without the possibility of parole for the offense of aggravated murder, as well as eight-year prison terms for each offense of rape, robbery, and burglary.
 {¶ 2} Appellant's appointed counsel has submitted a request to withdraw as counsel pursuant to Anders v. California (1967),386 U.S. 738. Appellant's counsel asserts that after reviewing the transcripts in the proceeding and the relevant statutory and case law, she can find no arguable issues for appellate review. Appellant's counsel further states that she mailed a copy of the brief and request to withdraw to appellant and, pursuant toAnders, informed appellant that he had a right to file his own brief. Appellant has not filed a pro se brief.
 {¶ 3} Consistent with Anders, appellant's counsel has set forth the following proposed assignments of error:
 Issue One {¶ 4} "Whether the defendant-appellant was denied effective representation by competent counsel.
 Issue Two {¶ 5} "Whether the trial court and trial counsel denied the defendant-appellant due process when they failed to address the issue of defendant-appellant's competency to stand trial.
 Issue Three {¶ 6} "Whether the trial court abused its discretion when sentencing defendant."
 {¶ 7} We first note that once the Anders requirements are satisfied, the appellate court must conduct a full examination of the proceedings held below to determine if the appeal is indeed frivolous. If the appellate court determines that the appeal is frivolous, it may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements or may proceed to a decision on the merits if state law so requires. Id. at 744.
 {¶ 8} On April 8, 2002, appellant was indicted on one count of aggravated murder with death penalty specifications and one count each of rape, burglary, and robbery. Appellant entered a not guilty plea. On November 18, 2002, appellant withdrew his not guilty plea and entered a no contest plea to all the counts and specifications. At the hearing held pursuant to Crim.R. 11(C)(3), the following relevant testimony was presented.
 {¶ 9} John Keller testified that he lived across the street from the victim, Rhonda Douglas. Keller testified that on March 29, 2002, at approximately 7:30 a.m., he saw appellant outside of Douglas's house. Keller stated that it looked like appellant was concealing something in his left hand Keller found the situation suspicious and telephoned the police. The police drove by and found that nothing was awry.
 {¶ 10} Later in the day, Oregon Police Officer Edward Depinet was dispatched to Douglas's neighbor's house. The neighbors, Casey and Connie Lupien, were concerned because they had learned that Douglas had not shown up for work or called in sick. Depinet entered Douglas's home through the unlocked back door and discovered Douglas lying nude, face down in a pool of blood. Douglas was deceased.
 {¶ 11} Lucas County Deputy Coroner Dr. Diane Scala-Barnett testified that she had conducted an autopsy on Douglas. Dr. Scala-Barnett testified that Douglas had been stabbed 47 times, had been beaten, raped, and strangled with a ligature.
 {¶ 12} Oregon Police Detective Kelly Thibert interviewed appellant on March 30, 2002. Prior to questioning, Thibert reviewed the Miranda warnings, asked appellant if he understood his rights, and had appellant sign and date the waiver form. Thibert testified as to appellant's recorded statement. Appellant admitted to hitting and stabbing Douglas; he denied raping her, he stated that the sex was consensual. Appellant also admitted to stealing Douglas's car.
 {¶ 13} Officer Thibert also testified that she executed a search warrant for a house on Momany Street, approximately one block from Douglas's home, where appellant lived with his family. Thibert testified that she and several officers recovered a pair of appellant's shoes with tread that matched the bloody tread patterns left at the crime scene, a white cotton tank top with a substance on it that appeared to be blood, and a pair of jeans. The Bureau of Criminal Identification and Investigation laboratory report provided that Douglas could not be excluded as the source of DNA in the stain on the tank top.
 {¶ 14} Thibert was also involved in the recovery of Douglas's vehicle. She testified that the individual found with the car positively identified appellant. Testimony was also presented to show that on March 29, 2002, at approximately 6:30 a.m., appellant attempted to purchase items at a Meijer store using Douglas's credit card.
 {¶ 15} Toledo Police Detective Terry Cousino testified that he was involved in processing the crime scene. Cousino positively identified fingerprints found at the scene as appellant's.
 {¶ 16} Following the testimony, a three-judge panel found appellant guilty of all the counts in the indictment as well as the specifications. According to R.C. 2929.04, the case then proceeded to the mitigation phase. The testimony presented included two Lucas County Youth Treatment Center counselors who treated appellant during his 13-month commitment following his conviction for receiving stolen property. Sandra Zollweg testified that during appellant's treatment, he took his medication about 90 percent of the time. Zollweg testified that his behavior was typical of the youth they see at the treatment center.
 {¶ 17} Zollweg testified that appellant's mother and stepfather were very supportive and participatory, but that they were overindulgent and did not set and enforce limits. Appellant had not had contact with his father since he was five years old; he did not wish to have contact because his father was abusive. Zollweg testified that appellant was successfully discharged from the program on February 19, 2002.
 {¶ 18} During cross-examination, Zollweg acknowledged that appellant understood the purpose of his medication and he was capable of making an informed choice as to whether or not to take the medication.
 {¶ 19} Todd Black, also of the Lucas County Youth Treatment Center, testified that he is an after-care counselor, meaning that he works with the youths when they start going back into the community. Black testified that within a few weeks of appellant's going home he was using alcohol and marijuana; on March 25, 2002, appellant tested positive for marijuana.
 {¶ 20} Black testified that appellant's mother made sure that appellant was taking his medication; however, she was unable to do so when appellant did not come home at night.
 {¶ 21} Jolie Brahms, the licensed clinical psychologist retained by appellant, testified next. Brahms testified that her evaluation of appellant consisted of numerous interview sessions with appellant and his family, reviewing appellant's psychiatric records, reviewing court records, reviewing educational records, and conducting various intellectual and academic tests.
 {¶ 22} Brahms testified that the testing revealed that appellant has learning disabilities and has an I.Q. of approximately 73. According to Brahms, appellant has significant difficulties in the areas of auditory processing and short-term memory. Appellant performed very poorly in school but was never assessed for learning disabilities. Though he scored poorly, appellant did get his GED.
 {¶ 23} Brahms discussed the significance of appellant's family history. Appellant's father was very violent, abused appellant's mother, was a drug dealer and a womanizer. Appellant had contact with him until he was five and, according to Brahms, was exposed to a great deal of domestic violence and was, himself, abused.
 {¶ 24} According to Brahms, appellant's mother and stepfather were very cooperative and polite; however, they did not have the ability to supervise or discipline appellant. Appellant's parents did not intervene when appellant was smoking, using drugs, or coming home drunk.
 {¶ 25} The above factors contributed to appellant's mental health problems. Brahms explained that appellant has several disorders including bipolar disorder and intermittent explosive disorder. Brahms described the features of bipolar disorder as episodes of major depression, intermittent anger, hypersexuality, drug and alcohol abuse, poor judgment, sleep problems, and out of control behaviors. Appellant had several suicide attempts.
 {¶ 26} Brahms testified that appellant's counsel did have concerns that appellant's mental problems may have been the basis for a NGRI or not guilty by reason of insanity plea. During her assessment, Brahms determined that appellant's impairment and functioning did not meet the level of NGRI. Brahms testified that a person's mental health disorder may explain why a person behaved a certain way but it does not excuse the behavior.
 {¶ 27} Brahms testified that appellant had remorse for the crime. Brahms stated that appellant could successfully treat himself and that he has the ability to mature.
 {¶ 28} Appellant then made a statement. He apologized to the family and friends of the victim and asked that he not be put to death.
 {¶ 29} The court then found the following mitigating factors: (1) appellant's age of 18; (2) appellant's mental capacity, his I.Q. and his mental disorders; and (3) the bizarre and frenzied nature of the acts. The court then found that the mitigating factors outweighed the aggravating factors and sentenced appellant to life imprisonment without the possibility of parole. This appeal followed.
 {¶ 30} Counsel's first potential assignment of error argues that appellant's trial counsel was ineffective by failing to address his competency. Appellant's second potential assignment of error also asserts that trial counsel and the court denied appellant due process when they failed to address the issue of appellant's competency to stand trial. Because both potential errors raise the issue of appellant's competency, we shall address them simultaneously.
 {¶ 31} We first note that legal representation is constitutionally ineffective, and a basis for reversal or vacation of a conviction, when counsel's performance is deficient and results in prejudice to the accused. Strickland v.Washington (1984), 466 U.S. 668. In order to prove ineffective assistance of counsel, a defendant must show (1) that his counsel's performance fell below an objective standard or reasonable representation in some particular respect or respects and (2) that he was so prejudiced by the defect or defects that there exists a reasonable probability that, but for counsel's errors, the result of the trial would have been different. Statev. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus, following Strickland
 {¶ 32} As to the issue of competency, the Supreme Court of Ohio has held that "[t]he term `mental illness' does not necessarily equate with the definition of legal incompetency."State v. Berry (1995), 72 Ohio St.3d 354, syllabus. Berry
further states:
 {¶ 33} "In Dusky v. United States (1960), 362 U.S. 402,80 S.Ct. 788, 789, 4 L.Ed.2d 824, 825, the United States Supreme Court set forth the test to determine whether a defendant is competent to stand trial, stating that `* * * the "test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding- and whether he has a rational as well as factual understanding of the proceedings against him."' * * * The right to a hearing on the issue of competency rises to the level of a constitutional guarantee where the record contains `sufficient indicia of incompetence,' such that an inquiry into the defendant's competency is necessary to ensure the defendant's right to a fair trial." (Citations omitted.) Id. at 359.
 {¶ 34} In the case sub judice, the record contains absolutely no evidence to suggest that appellant was not competent to stand trial. During the plea hearing, appellant responded appropriately to the questions posed by the court. According to psychologist Jolie Brahms, appellant was cooperative during his interviews and testing and "in many ways, as troubled as he may be, is in many ways a normal adolescent * * *." Further, in appellant's statement to the court he expressed remorse, apologized for his actions, and, in essence, pleaded for his life.
 {¶ 35} Based on the foregoing, we find that neither counsel nor the court erred in failing to address the issue of appellant's competency to stand trial. Accordingly, appellant's first and second potential assignments of error are not well-taken.
 {¶ 36} Appellant's third potential assignment of error states that the trial court abused its discretion when sentencing appellant. As stated by appellant's counsel, the court was limited under R.C. 2929.03, to sentencing appellant as follows:
 {¶ 37} "[C](2)(a) If the indictment or count in the indictment contains one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code and if the offender is found guilty of both the charge and one or more of the specifications, the penalty to be imposed on the offender shall be one of the following:
 {¶ 38} "(i) Except as provided in division (C)(2)(a)(ii) of this section, the penalty to be imposed on the offender shall be death, life imprisonment without parole, life imprisonment with parole eligibility after serving twenty-five full years of imprisonment, or life imprisonment with parole eligibility after serving thirty full years of imprisonment.
 {¶ 39} "(ii) If the offender also is convicted of or pleads guilty to a sexual motivation specification and a sexually violent predator specification that are included in the indictment, count in the indictment, or information that charged the aggravated murder, the penalty to be imposed on the offender shall be death or life imprisonment without parole that shall be served pursuant to section 2971.03 of the Revised Code.
 {¶ 40} "(b) A penalty imposed pursuant to division (C)(2)(a)(i) or (ii) of this section shall be determined pursuant to divisions (D) and (E) of this section and shall be determined by one of the following:
 {¶ 41} "(i) By the panel of three judges that tried the offender upon the offender's waiver of the right to trial by jury;
 {¶ 42} "(ii) By the trial jury and the trial judge, if the offender was tried by jury.
 {¶ 43} "* * *.
 {¶ 44} "[D](2) Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable, the reports submitted pursuant to division (D)(1) of this section, the trial jury, if the offender was tried by a jury, shall determine whether the aggravating circumstances the offender was found guilty of committing are sufficient to outweigh the mitigating factors present in the case. If the trial jury unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, the trial jury shall recommend to the court that the sentence of death be imposed on the offender. Absent such a finding, the jury shall recommend that the offender be sentenced to one of the following:
 {¶ 45} "(a) Except as provided in division (D)(2)(b) of this section, to life imprisonment without parole, life imprisonment with parole eligibility after serving twenty-five full years of imprisonment, or life imprisonment with parole eligibility after serving thirty full years of imprisonment;
 {¶ 46} "(b) If the offender also is convicted of or pleads guilty to a sexual motivation specification and a sexually violent predator specification that are included in the indictment, count in the indictment, or information that charged the aggravated murder, to life imprisonment without parole."
 {¶ 47} Because appellant was convicted of aggravated murder with a rape specification and appellant was classified as a sexual predator, the three-judge panel's only sentencing options were the death penalty or life imprisonment without parole. Pursuant to R.C. 2929.04(B), the court, in giving appellant a life sentence, found that the mitigating factors of appellant's age, (B)(4), appellant's mental capacity, (B)(3), and, under (B)(7), the bizarre and frenzied nature of the acts, outweighed the aggravating factors and precluded the imposition of the death penalty. Accordingly, appellant's third potential assignment of error is not well-taken.
 {¶ 48} Upon our own independent review of the record, we find no other grounds for a meritorious appeal. This appeal is, therefore, found to be without merit and is wholly frivolous. Appellant's counsel's motion to withdraw is found well-taken and is hereby granted. The judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, court costs of this appeal are assessed to appellant.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Lanzinger, J., Singer, J., concur.